# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD MANNING,<br><br>　　　　　Movant-Defendant,<br>　　v.<br>UNITED STATES OF AMERICA,<br><br>　　　　　Respondent-Plaintiff. | Civ. Case No.:　10cv833 BTM<br>Crim. Case No.: 06cr1021 BTM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART § 2255 MOTION** |

　　Defendant Donald Manning ("Defendant" or "Manning") has filed a motion to vacate, set aside, or reduce his sentence pursuant to 28 U.S.C. § 2255.  For the reasons discussed below, Defendant's motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

　　On May 11, 2006, a federal grand jury in the Southern District of California returned a twelve-count Indictment charging Cameron Campbell, Joseph Wayne McCool, and Donald Manning with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, and eleven counts of wire fraud in violation of 18 U.S.C. § 1343.

　　After being arrested in Nicaragua, Manning made his first appearance in the case on February 28, 2008.

　　On January 16, 2009, Manning entered a plea of guilty to Count 1 (conspiracy) and Count 11 (wire fraud) pursuant to a Plea Agreement.  (Gov't Ex. 1.)  The Plea Agreement

sets forth the factual basis for the guilty plea – i.e., facts regarding (1) Manning's participation in a conspiracy with McCool and Campbell to induce investors to invest money in The Brixon Group Ltd. by making fraudulent representations and failing to disclose material facts; and (2) Manning's involvement in causing the wire transfer of $71,745.55 (the retirement funds of James and Shirley Peterson) from outside California to Campbell's Attorney Client Trust Account located in San Diego, California, for investment in Brixon.  (Plea Agreement, § 2.B.)

Under the terms of the Plea Agreement, Manning agreed to waive any right to appeal or to collaterally attack the conviction and sentence, provided the Court imposed a custodial sentence no greater than the high-end of the guideline range recommended by the Government pursuant to the Plea Agreement at the time of sentencing.  (Plea Agreeement, § XI.)

At sentencing, the Court determined that Manning had a Criminal History Category of I and an adjusted offense level of 26.  The Court rejected the Government's argument that the Court should impose a two-level enhancement under USSG § 2B1.1(b)(8)(A) for alleged misrepresentations by Manning that he was "acting on behalf of" a charitable organization. The Court sentenced Manning to 63 months, the low-end of the guideline range.

## II. DISCUSSION

In his § 2255 motion, Manning claims that the judgment should be set aside because (1) he was denied effective assistance of counsel in connection with entering the guilty plea; (2) he was denied effective assistance of counsel because his attorney refused to file a Notice of Appeal even though Manning requested that he do so; (3) his rights to a jury trial and due process were denied because his sentence was enhanced based on facts not found by a jury beyond a reasonable doubt; and (4) he is factually innocent.

A waiver of appeal and/or collateral attack of a conviction is enforceable if voluntarily made.  United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994).  If ineffective assistance of counsel renders the plea agreement containing the waiver involuntary, the defendant may appeal or collaterally attack his sentence.  See  Washington v. Lampert, 422 F.3d 864, 871

(9th Cir. 2005) (holding that "a plea agreement that waives the right to file a federal habeas petition under 28 U.S.C. § 2254 is unenforceable with respect to an ineffective-assistance-of-counsel claim that challenges the voluntariness of the waiver"). See also Pruitt, 32 F.3d at 433 (expressing "doubt" that such a waiver could be enforceable in a § 2255 context).

Manning claims that he did not knowingly and voluntarily enter into the Plea Agreement because defense counsel "misled" him as "to the potential punishment he was facing" to scare him into entering into the plea, failed to advise him of his rights and the burdens that are placed on the government, misled him regarding the likely outcome if he availed himself of his jury rights, and failed to expressly advise him that he had a right to attack his sentence on direct appeal and collateral attack and that such rights might be foreclosed by the Plea Agreement. With respect to Manning's claims that his counsel somehow misled him regarding what might happen if he went to trial, Manning does not provide any details regarding what his attorney said. Therefore, the Court cannot conclude that his attorney gave him inaccurate or misleading advice. As for Manning's claims that his attorney failed to advise him of his various rights and the government's burdens, even assuming the truth of Manning's claims, Manning did not suffer any prejudice because the Court made sure that Manning was aware of his rights and the government's burden of proof before accepting his plea.

Before accepting the plea, the Court confirmed that Manning had read the Plea Agreement and understood its terms. (Transcript of Change of Plea Hearing on 1/16/09 (Gov't Ex. 2), 13:8-20.) The Court explained that ordinarily a defendant has a right to appeal or collaterally attack a sentence but that under the terms of the Plea Agreement, Manning would be giving up that right. (Id. at 15:21-16:8.) The Court also explained that Manning had a right to a trial by jury during which he would be presumed to be innocent and that the government would be required to prove his guilt beyond a reasonable doubt as to each and every element of the charges against him. (Id. at 17:24-18:22.) The Court made sure that Manning entered into the plea voluntarily and that nobody had threatened him, coerced him, or pressured him any way to get him to plead guilty. (Id. at 17:13-17.) The Court also

walked Manning through the factual basis of the guilty plea set forth in the Plea Agreement and warned Manning that he was required to tell the truth. (Id. at 22:18-21.) Manning confirmed the accuracy of the facts set forth in the Plea Agreement. Although Manning contended that he did not initially know that illegal activity was occurring, Manning admitted the once he was aware of the criminal nature of the enterprise, he continued to participate in soliciting investors and money for Brixon and inducing investors to wire funds to Campbell's Attorney Client Trust Account, knowing that the investors were relying on materially false information. (Id. at 24:4- 32:6.)

The Court accepted Manning's guilty plea after concluding that Manning understood the nature and elements of the offense, the maximum possible penalties, and his rights. "As I said, there is a factual basis set forth in the plea agreement. We've gone over it, and you are clearly competent and capable and you knowingly, voluntarily, and intelligently waived your rights and entered the plea." (Id. at 34: 21-24.)

Manning has not presented any evidence showing that the Court was mistaken in concluding that his plea was knowing, intelligent, and voluntary. Apparently Manning has had a change of heart regarding his guilty plea and wishes to recharacterize his role in the conspiracy as that of a completely innocent pawn. However, his feelings of regret have no bearing on the enforceability of the Plea Agreement. Manning is not entitled to any relief on his claim of ineffective assistance of counsel in connection with entering into the Plea Agreement, and Manning is bound by the terms of the Plea Agreement.

Because Manning has waived his right to collateral attack, Manning is precluded from arguing actual innocence.[1]  Manning is also precluded from arguing that his Sixth

---

[1] In his Reply brief, Manning makes a new argument that the government failed to provide him with statements by Campbell that would show that Manning was a pawn used in furtherance of Campbell and McCool's scheme and was in the dark about their illegal activities until two months prior to the company's collapse. To the extent Manning seeks to raise a claim that the government breached the Plea Agreement by failing to provide information establishing his factual innocence (Plea Agreement § V), the Court finds that the claim lacks merit. Manning does not specifically identify any statements by Campbell that establish his factual innocence. Even if Campbell's statements showed that Manning was a pawn and that Campbell and McCool intended to keep him in the dark, Manning would still be culpable if, *as he admitted to the Court*, once he found out the truth, he continued to solicit investors and money for Brixon even though he knew that the investors/ potential investors

Amendment rights were violated by the Court's consideration of facts not found by the jury in sentencing Manning.  At any rate, because the Guidelines are advisory, a district court may impose a sentence anywhere within the range established by the statute of conviction without violating the Sixth Amendment.  United States v. Treadwell, 593 F.3d 990, 1017 (9th Cir. 2010).  If the sentence imposed by the district court does not exceed the statutory maximum set by the United States Code, there is no violation of the Sixth Amendment even if the court relied on facts not found by the jury in determining the sentence.  Id.  Because Manning's sentence was well below the statutory maximum, his Sixth Amendment claim fails.

Manning also claims that his attorney was ineffective for refusing to file a Notice of Appeal on his behalf.  Even if a defendant has waived his right to appeal, if the defendant explicitly tells his lawyer to appeal his case and his lawyer refuses, the lawyer has acted in a manner that is professionally unreasonable, and the defendant has suffered prejudice in the form of a lost chance to file an appeal.  United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005).  When a petitioner claims that his attorney refused to file a Notice of Appeal, despite a specific request to do so, the Court needs to hold an evidentiary hearing to determine whether the petitioner really did instruct his attorney to appeal and whether his attorney nonetheless refused to file the Notice of Appeal.  Id. at 1198.  Alternatively, the government may choose not to oppose the petition and to let the petitioner appeal.  Id.  In this instance, the court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.  Id.

---

were relying on fraudulent statements:

> THE COURT: Okay, So if you would have walked away at that point saying, hey, this is illegal and I am not going to have anything to do with it, you wouldn't be standing here.  But the fact is not knowing in the beginning but learning later and continuing, you committed the crime –
>
> THE DEFENDANT: Yes.
>
> THE COURT:  – is that correct?
>
> THE DEFENDANT: Yes.

(Transcript of Change of Plea Hearing, 31:24-32:6.)

The government has chosen not to oppose Defendant's § 2255 motion as to his claim that his attorney was ineffective for refusing to file a Notice of Appeal. Therefore, the Court **GRANTS** the motion as to this claim and will order that the judgment be vacated and reentered.

### III. CONCLUSION

For the reasons discussed above, Defendant's § 2255 motion is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** as to Defendant's claim that his attorney was ineffective for refusing to file a Notice of Appeal and is **DENIED** as the remainder of Defendant's claims. The Clerk shall **VACATE** and **REENTER** the Judgment in this case so that Defendant may proceed with his appeal. Defendant is responsible for filing his Notice of Appeal within the time prescribed by Fed. R. App. P. 4(b). Defendant's request for Appointment of Counsel on appeal is referred to Magistrate Judge Porter.

**IT IS SO ORDERED.**

DATED: July 12, 2010

*Barry Ted Moskowitz*

Honorable Barry Ted Moskowitz
United States District Judge